UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
                                                 :
FELDMAN LAW GROUP P.C. as                        :
assignee of THE HYMAN COMPANIES,                 :
INC. d/b/a LANDAU JEWELRY,                        :
                                                 :
                              Plaintiff,          :
                                                 :        **OPINION AND ORDER**
              - against -                         :
                                                 :        **11 Civ. 425 (SAS)**
                                                 :
LIBERTY MUTUAL INSURANCE                          :
COMPANY a/k/a LIBERTY MUTUAL                      :
GROUP,                                            :
                              Defendant.          :
------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Feldman Law Group ("FLG") brings suit against Liberty Mutual

Insurance Company ("Liberty") as a result of Liberty's refusal to provide a defense

to The Hyman Companies ("Hyman") in an earlier action before this Court.[1]

Liberty now moves to dismiss for failure to state a claim.  For the reasons

discussed below, Liberty's motion is granted.

## II.   BACKGROUND

On January 24, 2007, Van Cleef and Arpels Logistics SA ("Van

---

[1]      *See Van Cleef & Arpels Logistics, S.A. v. Goldstein Jewelers*, 08 Civ.
3007 (SAS).

Cleef") brought suit for copyright and trade dress infringement[2] against Hyman, an

Allentown, Pennsylvania, corporation with jewelry stores nationwide,[3] including

Landau Jewelry in New York.[4]  Van Cleef alleged that Hyman produced jewelry

featuring a series of elements representing the Alhambra Trade Dress, which is

copyrighted Van Cleef property.[5]  Alleging that Hyman's jewelry was "confusingly

similar" to its own, Van Cleef complained that Hyman was responsible for trade

dress infringement as a violation of Section 43(a) of the Lanham Act,[6] common

law trade dress infringement and unfair competition, and copyright infringement.[7]

While Van Cleef asked the court for injunctive relief to halt Hyman from

continuing to advertise the offending jewelry and requested that all advertising

material, such as catalogs and circulars, be destroyed,[8] it was the underlying

production, and subsequent sale and distribution, of the jewelry that subjected

---

[2]    *See* Complaint ¶ 9.

[3]    *See id.* ¶ 4.

[4]    *See* Complaint in *Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry* ("Underlying Complaint"), Ex. 2 to Complaint, ¶ 4.

[5]    *See id.* ¶ 17.

[6]    *See* 15 U.S.C. § 1125(a).

[7]    *See* Underlying Complaint ¶ 20; *see also* 17 U.S.C. § 501 (outlining copyright infringement claim).

[8]    *See* Underlying Complaint ¶¶ 21-23.

Hyman to Van Cleef's action.[9]

Hyman hired FLG as defense counsel and apprised Liberty, its insurance provider, of the pending litigation.[10]  Hyman requested that Liberty provide a defense pursuant to the insurance policy Hyman had purchased.[11]  The policy states that the insurance company has "the right and duty to defend" in any suit seeking damages for "personal and advertising injury."[12]  FLG avers that Liberty was duty-bound to defend Hyman "against claims of Trade Dress and Copyright Infringement resulting from insured's alleged advertisement of infringing goods and products."[13]  The policy, which is attached to and incorporated by reference into the Complaint, only covers injury arising out of "the use of another's advertising idea" or "infringing upon another's copyright, trade dress or slogan in your advertisement."[14]

The policy contains fifteen exclusions of acts which are not covered.

---

[9]    *See id.* ¶¶ 20, 23, 29, 35.

[10]    *See* Complaint ¶¶ 13-14.

[11]    *See id.* ¶ 14.

[12]    Liberty Mutual Insurance Policy Endorsements ("Liberty Policy"), Ex. 1 to Complaint, at 1.

[13]    Complaint ¶ 29.

[14]    Liberty Policy at 4.

Exclusion "i" pertains to "'[p]ersonal and advertising injury' arising out of infringement of copyright, patent, trademark, trade secret or other intellectual property rights or out of securities fraud."[15]  The policy makes clear that the exclusion does not apply to trade dress or copyright infringement in an advertisement, but otherwise exempts intellectual property-related offenses from coverage.[16]

In a letter dated September 27, 2010, a Liberty representative outlined Liberty's refusal to provide a defense.[17]  Liberty explained that while Van Cleef requested that Hyman be enjoined from continuing to advertise the offending jewelry, the trade dress and copyright infringement claims did not stem from Hyman's advertising.[18]  Liberty further explained that although Van Cleef did allege that Hyman distributed its jewelry by "other means," such an allegation was "not sufficiently specific as to constitute an allegation of advertising."[19]  Liberty's

---

[15]    *Id.* at 2.

[16]    *See id.*

[17]    *See* 9/27/10 Letter from Defendant to Plaintiff ("Denial Letter"), Ex. 3 to Complaint.  The letter states that Liberty originally set forth its reasons for denying coverage on October 25, 2007, but that document was not submitted to the Court with the Complaint.

[18]    *See id.*

[19]    *Id.*

letter also contended that because a Pennsylvania sales office sold the insurance policy to Hyman in Pennsylvania, that state's law applied.[20]  As a result, Liberty maintained that any allegations extrinsic to the Complaint could not be considered in determining whether the policy covers a claim.[21]

Van Cleef's action against Hyman was settled at Hyman's expense, prompting it to file for bankruptcy.[22]  As the assignee of Hyman's rights and interests in the insurance policy at issue, FLG now brings suit against Liberty.[23] FLG claims breach of contract, unfair insurance practices, and common law deceit and fraud.[24]  Regarding the claim of unfair insurance practices, FLG asserts that Liberty "intentionally misrepresented its policy's true nature."[25]  As for the deceit and fraud charges, FLG claims that "Liberty deceived the insured when it advertised, promoted, and sold its insurance policy to Hyman."[26]  Liberty now

---

[20]     *See id.*

[21]     *See id.* (citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317 (2006)).

[22]     *See* Complaint ¶ 16.

[23]     *See id.* ¶ 1.

[24]     *See id.*

[25]     *Id.* ¶ 36.

[26]     *Id.* ¶ 39.

moves to dismiss all three counts for failure to state a claim.

## III.   CHOICE-OF-LAW ANALYSIS

### A.   New York Choice-of-Law

In diversity actions, federal courts follow the choice-of-law rules of the forum state to determine the controlling substantive law.[27]  Under New York choice-of-law rules, courts first determine whether there is a substantive conflict between the laws of the relevant choices.[28]  "In the absence of substantive difference . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it."[29]  If there is a conflict, in a contract case, "[i]t is well settled that New York has long recognized 'the use of a center of gravity or grouping of contacts analytical approach to choice of law questions.'"[30]  Among the factors to consider

---

[27]     *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006).

[28]     *See GlobalNet Financial.com*, 449 F.3d at 382 (quoting *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (1993)) ("The New York Court of Appeals has held that 'the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.'").

[29]     *International Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

[30]     *In re Liquidation of Midland Ins. Co.*, 16 N.Y.3d 536, 543 (2011) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton*, 84 N.Y.2d 309, 317 (1993)

are "the place of contracting, the places of negotiation and performance, the

location of the subject matter, and the domicile or place of business of the

contracting parties."[31]  In the insurance context, courts typically apply the law of

the state "which the parties understood was to be the principal location of the

insured risk,"[32] unless the policy in question "cover[s] risks that are spread

throughout multiple states."[33]  In such cases, the goals of "'certainty, predictability

and uniformity of result' and 'ease in the determination and application of the law

to be applied'" augur in favor of applying the laws of the insured's principle

domicile.[34]

To resolve conflicts in tort cases, New York applies an "interest

analysis" to identify the jurisdiction that has the greatest interest in the litigation

based on the occurrences within each jurisdiction, or contacts of the parties with

---

(citations omitted)).

[31]    *Tri-State Emp't Servs., Inc. v. Mountbatten Sur. Co., Inc.*, 295 F.3d 256, 261 (2d Cir. 2002), *certified question accepted*, 98 N.Y.2d 726 (2002), *certified question answered*, 99 N.Y.2d 476 (2003).

[32]    *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 822 N.Y.S.2d 30, 33 (2006), *aff'd*, 9 N.Y.3d 928 (2007) (quoting *Zurich*, 84 N.Y.2d at 318 n.5).

[33]    *Id.* at 33.

[34]    *Id.* at 34 (quoting Restatement (Second) of Conflict of Laws § 6(2)(f)).

each jurisdiction, that "'relate to the purpose of the particular law in conflict.'"[35]

When the law is one which regulates conduct, "the law of the jurisdiction where

the tort occurred will generally apply because that jurisdiction has the greatest

interest in regulating behavior within its borders."[36]  A tort occurs in "the place

where the injury was inflicted," which is generally where the plaintiff is located.[37]

## B.    Application

FLG contends that New York law applies, while Liberty maintains

that the Court should apply Pennsylvania law.  Comparing New York and

Pennsylvania law governing a contractual duty-to-defend, there is at least one

important difference.  In Pennsylvania, "'[t]he obligation of an insurer to defend an

action against the insured is fixed solely by the allegations in the underlying

---

[35]    *GlobalNet Financial.com*, 449 F.3d at 384 (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985)).  *Accord Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d Cir. 2005) (citation omitted) (explaining that the interest analysis is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation").

[36]    *GlobalNet Financial.com*, 449 F.3d at 384.

[37]    *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001) (citation and quotation marks omitted).  *Accord Sack v. Low*, 478 F.2d 360, 365-66 (2d Cir. 1973) (interpreting New York law).

complaint.'"[38]  In contrast, in New York, "[t]he duty of an insurer to defend arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, *or* where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage.'"[39]  The difference is subtle, but important.  Whereas Pennsylvania employs a strict four-corners rule, New York will impose a duty to defend based on knowledge extrinsic to the contract.  This difference has the potential to fundamentally alter a court's analysis, and as such represents a conflict sufficient to require a formal choice-of-law analysis.

In undertaking such an inquiry, I conclude that Pennsylvania law applies and that plaintiff's contention that New York law should apply (because the underlying lawsuit and settlement occurred in New York) is unavailing.  The policy itself, which functions as the contract, was sold by Liberty's Allentown, Pennsylvania, sales office and listed the insured as an Allentown, Pennsylvania, corporation.  Though it is certainly true that the insured risk was spread among

---

[38]    *Nationwide Mut. Fire Ins. Co. v. Malofiy*, CIV. A. No. 10-2410, 2011 WL 1050050, at *5 (E.D. Pa. Mar. 22, 2011) (quoting *Erie Ins. Exch. v. Fidler*, 808 A.2d 587, 590 (Pa. Super. 2002)).

[39]    *Nunez v. Mariners Temple Baptist Church*, No. 103308/07, 2009 WL 3254510, at *4 (Sup. Ct. N.Y. Co. Oct. 8, 2009) (quoting *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 65-67 (1991)) (emphasis added).

multiple states — including New York, where Landau Jewelry, the underlying

action's plaintiff, was located — in such cases it is appropriate to look to the

insured's domicile, which is Pennsylvania.[40]

     As for the actions in tort, FLG makes two claims: unfair insurance

practices and common law deceit and fraud.  On these claims, the laws of New

York and Pennsylvania appear to be in accord.  With respect to unfair insurance

practices, neither state explicitly permits such a claim, although both allow an

alternate route to seek damages for such conduct.[41]  As to fraud and deceit, the

---

[40]    In a May 5, 2011 letter to the Court, FLG urged the Court to consider in its choice-of-law analysis *U.B. Vehicle Leasing, Inc. v. Atlantic Mut. Ins., Co.*, No. 00 Civ. 9266, 2004 WL 503729, at *5 (S.D.N.Y. Mar. 12, 2004).  In holding that New York law applied, Judge Denny Chin relied on the fact that the underlying lawsuit was brought in New York and that therefore the alleged wrongful conduct by the insurance agency occurred in New York.  FLG, however, omitted Judge Chin's earlier observation that the location where the insurance policy in controversy was signed was also an important factor.  Further, *U.B. Vehicle Leasing* relied upon *Tri-State Employment Services, Inc. v. Mountbatten Surety Co., Inc.* in reaching its decision.  As outlined above, there the Second Circuit advised district courts to also consider, *inter alia*, "the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." 295 F.3d at 261.  For the reasons outlined herein, on balance, these factors counsel in favor of applying Pennsylvania law.

[41]    *Compare State Farm Mut. Auto. Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94, 101 (E.D.N.Y. 2010) ("The Court of Appeals [in *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 82 N.Y.2d 603 (1994)] . . . found that § 2601 of the Insurance Law did not create an independent basis for a private right of action . . . . [It] also acknowledged that any common-law right to sue an insurer for punitive damages was not preempted by the enactment of section 2601.") *with*

elements of these causes of action in the two states are virtually identical.[42]

In the absence of an actual conflict, courts may apply New York law, but are not required to do so.  While FLG's complaint lacks specific factual allegations detailing the nature of Liberty's unfair insurance practices, deceit, and fraud, the gist seems to be that Liberty was less-than-truthful in advertising and selling its policy.  All the facts before the Court suggest that any alleged misrepresentations took place in Pennsylvania.[43]  As such, I will apply Pennsylvania law to all claims.

## IV.   APPLICABLE SUBSTANTIVE LAW

### A.   Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of the complaint under the

---

*Hardy v. Pennock Ins. Agency, Inc.*, 365 Pa. Super. 206, 215 (1987) (citations omitted) ("[T]his Court [has] held that even where the Unfair Insurance Practices Act applies [and eschews granting a private right of action], insureds may raise a common law cause of action against the insurer for fraud and deceit.").

[42]   *Compare Banks v. Jerome Taylor & Assoc.*, 700 A.2d 1329, 1333 (Pa. Super. Ct. 1997) *with Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 57 (1999) (citation omitted).

[43]   Indeed, it is highly unlikely that any such activities took place in New York.  There is perhaps a colorable claim that Massachusetts, the corporate domicile of Liberty, was the location of the alleged tortious conduct, but neither party makes such an argument and there are no facts to support it.

"two-pronged approach" dictated by the Supreme Court in *Ashcroft v. Iqbal*.[44]
First, a court "'can choose to begin by identifying pleadings that, because they are
no more than conclusions, are not entitled to the assumption of truth.'"[45]
"Threadbare recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice" to withstand a motion to dismiss.[46]  Second,
"[w]hen there are well-pleaded factual allegations, a court should assume their
veracity and then determine whether they plausibly give rise to an entitlement for
relief."[47]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the
complaint must meet a standard of "plausibility."[48]  A claim is facially plausible
"when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged."[49]
Plausibility "is not akin to a probability requirement;" rather, plausibility requires

---

[44]    556 U.S. —, 129 S.Ct. 1937, 1950 (2009).

[45]    *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[46]    *Iqbal*, 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[47]    *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[48]    *Twombly*, 550 U.S. at 564.

[49]    *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

"more than a sheer possibility that a defendant has acted unlawfully."[50]

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[51]  The court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[52]  Allegations made within the complaint that are "contradicted by more specific allegations or documentary evidence" are not entitled to a presumption of truthfulness.[53]

## B.    Breach of Contract

"To make out a viable claim for breach of contract, a 'complaint need

---

[50]    *Id.* (quotation marks omitted).

[51]    *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[52]    *Id*. (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

[53]    *L-7 Designs, Inc. v. Old Navy, LLC*, — F.3d. —, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (citing *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) and *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)).

only allege (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.'"[54]  Here, the only issue is whether defendant breached a duty.

### 1.    Duty to Defend

"The obligation of an insurer to defend an action against the insured is fixed solely by the allegations in the underlying complaint."[55]  "'In determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay resulting judgment. . . .  [T]he language of the policy and the allegations of the complaint must be construed together to determine the insurers' obligation.'"[56]  In undertaking that analysis, "'[w]hen the language of the policy is clear and unambiguous, [the court must] give effect to that language.'  Alternatively, when a provision in the policy is ambiguous, 'the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and

---

[54]    *Eternity Global Master Fund Ltd.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

[55]    *Nationwide Mut. Fire Ins. Co.*, 2011 WL 1050050, at *5 (quotation marks and citation omitted).

[56]    *Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 155 (2007) (quoting *Gene's Rest. Inc. v. Nationwide Ins. Co.*, 519 Pa. 306, 308 (1988)).

controls coverage.'"[57]  Pennyslvania's law is considered a strict four-corners rule.[58]

Still, "[a]n insurer has a duty to defend whenever the allegations of an underlying

complaint against a policyholder potentially fall within the coverage of the

policy."[59]

### 2.    "Personal and Advertising Injury"

Courts applying Pennsylvania law have also addressed the contours of

the phrase "personal and advertising injury."  To be covered under a policy:

> (1) the injury must be committed in the course of advertising the insured's goods, products, or services;
> (2) the injury must arise out of the offenses enumerated in the advertising injury definition;
> (3) the injury must be caused by the offense committed in the course of advertising; and
> (4) the offense must be committed during the policy period.[60]

Thus, "there must be some causal connection between the injury alleged and the

---

[57]      *Kvaerner Metals*, 589 Pa. at 331 (quoting *401 Fourth St. v. Investors Ins. Co.*, 583 Pa. 445, 455 (2005)).

[58]      *See, e.g.*, *Nationwide Mut. Fire Ins. Co.*, 2011 WL 1050050, at *5.

[59]      *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F. Supp. 423, 427 (E.D. Pa. 1994), *aff'd sub nom.*, *Atlantic Mut. Ins. Corp. v. Brotech Corp.*, 60 F.3d 813 (3d Cir. 1995) (citations omitted).

[60]      *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 20 F. Supp. 2d 798, 801-02 (M.D. Pa. 1998), *aff'd*, 193 F.3d 742 (3d Cir. 1999).

advertising activities of the insured."[61]  When an action stems from alleged

misappropriation of a product, rather than an advertising concept, the claim can no

longer be fairly characterized as alleging advertising injury.[62]  A complaint's

failure to allege the necessary causal relationship between injury and advertisement

serves as a basis for an insurance provider to decline to provide a defense.[63]

### C.   Tort Claims

#### 1.   Unfair Insurance Practices

Pennsylvania courts have held unequivocally that the state's Unfair

Insurance Practices Act does not confer a private right of action.[64]  Further, the

Court has not found, nor has the plaintiff identified, a single case addressing a

---

[61]     *Id.* at 803 (quoting *Winner Int'l Corp. v. Continental Cas. Co.*, 889 F. Supp. 809, 816 (W.D. Pa. 1994), *aff'd sub nom.*, *Cincinnati Ins. Co. v. Winner Int'l Corp.*, 54 F.3d 767 (3d Cir. 1995) (table)).  *Accord Atlantic Mut. Ins. Co.*, 857 F. Supp. at 427.

[62]     *See Green Mach. Corp. v. Zurich-Am. Ins. Grp.*, 313 F.3d 837, 841 (3d Cir. 2002); *see also Frog*, 20 F. Supp. 2d at 802.

[63]     *See Winner Int'l Corp*, 889 F. Supp. at 816.

[64]     *See Hardy*, 365 Pa. Super. at 215.  *See also Toy v. Metropolitan Life Ins. Co.*, 863 A.2d 1, 14 (Pa. Super. Ct. 2004), *aff'd*, 593 Pa. 20 (2007) ("Our Supreme Court has held that a private cause of action in tort does not lie under the Unfair Insurance Practices Act.); *D'Ambrosio v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 494 Pa. 501, 507-08 (1981) ("There is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act must be supplemented by a judicially created cause of action.").

common law cause of action for unfair insurance practices, even under New York law, which it contends applies.  The closest thing to a cause of action for unfair insurance practices is an action arising out of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[65]  That Act is "in relevant part designed to thwart fraud in the statutory sense, [so] it is to be construed liberally to effect its object of preventing unfair or deceptive practices."[66]  The Act describes situations which could conceivably give rise to liability, including some relevant to the instant case:

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
> (ix) Advertising goods or services with intent not to sell them as advertised;
> (xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made.[67]

However, claims under this Act "[incorporate] the traditional elements of common law fraud of reliance and causation."[68]  Furthermore, the private right of action

---

[65]     *See Hardy*, 365 Pa. Super. at 221.

[66]     *Pekular v. Eich*, 355 Pa. Super. 276, 287 (1986).

[67]     73 Pa. Stat. Ann. § 201-2.

[68]     *Toy*, 593 Pa. at 46 (citation omitted).

under the UTPCPL is limited to claims arising out of purchases or leases "for personal, family or household purposes."[69]  A product purchased for business purposes would presumably not give rise to an action under this Act.[70]  In any event, there is no precedent to suggest that any of these claims would constitute a claim for "unfair insurance practices" as such.[71]

## 2.    Common Law Deceit and Fraud

Under Pennsylvania law, the elements of common law fraud include:

(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.[72]

"Unsupported assertions and conclusory accusations cannot create genuine issues

---

[69]    73 Pa. Stat. Ann. § 201-9.2.

[70]    *See Wright v. North Am. Life Assur. Co.*, 372 Pa. Super. 272, 279-80 (1988) (declining to rule on the propriety of recovery under the UTPCPL because the lower court had not sufficiently developed the record, but juxtaposing a good or service used for business purposes with one used for "personal, family or household purposes").  *See also Weinberg v. Sun Co.*, 565 Pa. 612, 618 (2001) (holding that the UTPCPL requires plaintiff to allege that he acquired an offending product "for personal or household purposes as opposed to business purposes").

[71]    Stated differently, plaintiff may be seeking to recover for losses incurred as a result of insurance practices it deems unfair, but a court would not be addressing an action entitled "unfair insurance practices."

[72]    *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275 (3d Cir. 2010).

-18-

of material fact as to the existence of fraud."[73]  With respect to knowledge of the statement's or behavior's falsity, the requisite frame-of-mind has been "characterized as knowing or reckless, and applies when the maker of the utterance knows or believes that the matter is not as he or she represents it to be, does not have the confidence in the accuracy of the representation that is stated or implied, or knows that there is not the basis for the representation that is stated or implied."[74]  As for the intent to induce reliance, "[f]raud involves deliberate and intentional conduct calculated to deceive. . . .  Reckless conduct or negligence is not conduct deliberately calculated to deceive."[75]  And, of course, "the *sine qua non* of actionable fraud is the showing of a deception."[76]

### 3.    Federal Rule of Civil Procedure 9(b)

Rule 9(b) provides that "the circumstances constituting fraud . . . shall be stated with particularity."  To satisfy the particularity requirement, a complaint must: "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

---

[73]     *Blumenstock v. Gibson,* 811 A.2d 1029, 1034 (Pa. Super. Ct. 2002).

[74]     *Brindle v. West Allegheny Hosp.*, 406 Pa. Super. 572, 574-75 (1991) (citation omitted).

[75]     *Commonwealth v. Lurie*, 524 Pa. 56, 64 (1990).

[76]     *Frowen v. Blank*, 493 Pa. 137, 143 (1981).

explain why the statements were fraudulent.'"[77]  However, "intent, knowledge, and other conditions of mind may be averred generally."[78]

### D.   Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that other than amendments as a matter of course, "a party may amend its pleading only with the opposing party's written consent or with the court's leave."[79]  Although "[t]he Court should freely give leave when justice so requires,"[80] it is "within the sound discretion of the district court to grant or deny leave to amend."[81]  "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."[82]  However, "it is well established that leave to amend a complaint need not be granted when amendment would be futile."[83]

---

[77]   *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

[78]   Fed. R. Civ. P. 9(b).

[79]   *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quotation marks omitted).

[80]   Fed. R. Civ. P. 15(a)(2).

[81]   *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[82]   *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

[83]   *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

## V.      DISCUSSION

### A.      Breach of Duty to Defend

There was unquestionably an agreement, in the form of the written insurance policy, and there is no allegation of inadequate performance by the plaintiff or Hyman.  Thus, the only question is whether Liberty breached the contract when it refused to defend.  That, in turn, depends on whether it had a duty to do so.

FLG has failed to state a claim that Liberty had a duty to defend Hyman in the underlying action.  Hyman's policy clearly stated that only allegations of injury directly caused by advertisement would be covered.  FLG has not shown that Hyman inflicted the alleged injury in the course of advertising, or that the injury arose out of an offense listed within the policy's advertising definition, or that the injury was caused by an offense committed in the course of advertising.  Indeed, the policy states that intellectual property-related offenses arising out of anything other than advertising are not covered.  While it is true that plaintiff avers that Van Cleef claimed it had been injured by Hyman's advertising activities, that contention is belied by the allegations in the Underlying Complaint. Plaintiff has pled no facts to suggest that the defendant had any reason to believe that the Underlying Complaint fell within the policy's coverage.  FLG's claim is

dismissed.

### B.    Unfair Insurance Practices

To begin, plaintiff has not identified any concrete cause of action under which it brings its claim for unfair insurance practices.  The Complaint discusses practices of delay, unwillingness to participate in settlement negotiations, and denial of defense and coverage,[84] closely resembling the breach of contract claim already dismissed.  Further, plaintiff avers unfair and deceptive practices arising out of an intentional misrepresentation of benefits, advantages, conditions and terms of the policy, as well as intentional misrepresentation of the policy's true nature.[85]  These claims sound in fraud, which would require plaintiff to at least specify the nature of the fraudulent statements, to identify the speaker, and to make clear the location and approximate date of these occurrences.  Beyond identifying "defendant" as the perpetrator of said unfair practices, FLG has not pled any facts at all.  FLG points to no specific insurance agent or agents; plaintiff has offered no basis for its suggestion that misleading statements were made; and it has alleged not a single detail as to when the policy was advertised, negotiated or sold.[86]  Even

---

[84]    *See* Complaint ¶ 34.

[85]    *See id.* ¶¶ 35-36.

[86]    The Complaint avers only that Hyman is based in Pennsylvania, that Liberty is based in Massachusetts, and that Liberty issued a policy to Hyman.  *Id.*

if FLG had intended to raise a claim under the UTPCPL, it would need to show that Liberty misrepresented its policy.[87]  Without any factual content to so suggest, the Court cannot draw any inferences in the plaintiff's favor.  As FLG has not pled with any degree of particularity whatsoever, the claim is dismissed.

### C.    Common Law Deceit and Fraud

FLG's claim for common law deceit and fraud is barely distinguishable from its claim of unfair insurance practices.  FLG is slightly more specific here, in that it alleges that when Liberty offered a policy which would cover "advertising injury," it "knew full well the type of advertising done by the insured and others in their field, and that Liberty had no intention of recognizing their advertising as being covered by the policy it issued."[88]  Putting aside the fact that FLG has not included a single fact to suggest how the insured advertised or that Liberty knew that procedure "full well," FLG has failed to meet the basic particularity requirements outlined above.  The Complaint never identifies the speaker, nor the time or place of his allegedly misleading statements.  There is no

---

¶¶ 4-7.  The Denial Letter attached to the Complaint further outlines that the policy was issued to Hyman in Pennsylvania by a Pennsylvania sales office.  The Complaint sets forth no other facts about the contract's formation.

[87]    Further, FLG would need to demonstrate that Hyman purchased the policy for "personal, family or household purposes."

[88]    Complaint ¶¶ 39-40.

basis for finding FLG's allegations "plausible."  As such, this claim too is dismissed.[89]

### D.    Leave to Amend

Because the insurance policy and Underlying Complaint provide enough facts for the Court to determine that FLG cannot state a breach-of-contract claim, amendment to that part of the Complaint would be futile.  However, it is possible that with greater factual development, the claims for unfair insurance practices (properly labeled) and deceit and fraud will be plausible.[90]  As such, because amendment may not be futile, FLG may file an amended complaint within

---

[89]    Defendant contends that the Court should dismiss the third claim because it "improperly seeks to morph this garden variety breach of contract case into a fraud claim."  Defendant's Memorandum of Law in Support of Motion to Dismiss at 21 (quoting *Hart v. Arnold*, 2005 Pa. Super. 328, 339 (2005)).  Defendant argues that plaintiff was "preclude[d] from re-casting ordinary breach of contract claims into tort claims."  *Id.* (quoting *Hart*, 2005 Pa. Super. at 339).  Perhaps understandably, since plaintiff never explicitly specifies whether it is alleging fraudulent performance of the contract, fraudulent inducement to enter into the contract, or both, defendant does not distinguish between the two.  To the extent that plaintiff's claim is for fraudulent performance, such "duties arose solely from the contract between the parties and were created and grounded in the contract itself."  *Hart*, 2005 Pa. Super at 341.  As such, defendant is correct that the claim is barred.  On the other hand, the authority cited by defendant relies upon the existence of an integration clause in concluding that the claim for fraudulent inducement is also impermissible.  *See id.*  Because defendant has failed to bring to the Court's attention any such language in its own policy, I cannot dismiss the claim on the grounds defendant requests.

[90]    *See supra* note 90.

thirty (30) days of the date of this Order.

## VI.    REQUEST FOR COSTS

Defendant requests costs and disbursement.  It is well-settled in New York and the rest of the country, under the longstanding "American Rule," that attorneys' fees are "incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule."[91]  Liberty has not pointed to any such agreement, statute or rule.  Moreover, Liberty has not made a motion for sanctions "separately from other motions and requests" in accordance with Rule 11(c)(1)(B).[92]  Although this Court has the power to issue a show cause order on its own initiative, because "show cause orders will ordinarily be issued only in situations that are akin to contempt of court."[93] such an order is not appropriate here.  Liberty is, of course, free to bring a separate motion for sanctions, but because it has not done so, I do not reach the merits of whether the conduct of plaintiff warrants sanctions.  Liberty's request for imposition of costs and disbursement is therefore denied.

---

[91]    *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003).  *Accord United States Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 597 (2004).

[92]    Fed. R. Civ. P. 11(c)(1)(B).

[93]    Fed. R. Civ. P. 11, 1993 Advisory Committee Note.

## VII.   CONCLUSION

For the foregoing reasons, Liberty's motion to dismiss is granted.  The Clerk of the Court is directed to close this motion [docket No. 16].  If FLG does not file an amended complaint within 30 days, the case will be closed.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 30, 2011

-26-

**- Appearances -**

**For Plaintiff:**

Stephen E. Feldman, Esq.
Robert H. Morse, Esq.
Kalpana Nagampalli, Esq.
Feldman Law Group, P.C.
220 East 42nd Street
New York, NY 10017
(212) 532-8585

**For Defendant:**

Marshall T. Potashner, Esq.
Jaffe & Asher LLP
600 Third Avenue, 9th Floor
New York, NY 10016
(212) 687-3000