UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ X
                             :

FELDMAN LAW GROUP P.C. as   :
assignee of THE HYMAN COMPANIES, :
INC. d/b/a LANDAU JEWELRY,     
                             :

            Plaintiff,     :          **OPINION AND ORDER**

                             :

       - against -     :        **11 Civ. 425 (SAS)**

LIBERTY MUTUAL INSURANCE   :
COMPANY a/k/a LIBERTY MUTUAL   :
GROUP,
            Defendant.   :
------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

        Feldman Law Group ("FLG") filed suit against Liberty Mutual

Insurance Company ("Liberty") as a result of Liberty's refusal to provide a defense

to The Hyman Companies ("Hyman") in an earlier action before this Court.[1]  In a

June 30, 2011 Opinion and Order, the Court granted Liberty's motion to dismiss all

claims.[2]  On July 28, 2011, FLG moved for reconsideration.  For the reasons

---

       [1]     *See Van Cleef & Arpels Logistics, S.A. v. Goldstein Jewelers*, 08 Civ. 3007 (SAS).

       [2]     *Feldman Law Group P.C. v. Liberty Mut. Ins. Co.*, No. 11 Civ. 425, 2011 WL 2610642 (S.D.N.Y. June 30, 2011) ("June 30 Order").

discussed below, FLG's motion is denied.

## II.    BACKGROUND[3]

In the Underlying Action between Van Cleef and Arpels Logistics S.A. ("Van Cleef") and Hyman, Van Cleef alleged that Hyman produced jewelry featuring a series of elements representing the Alhambra Trade Dress, which is copyrighted Van Cleef property.[4]   Consequently, Van Cleef complained that Hyman was responsible for trade dress infringement as a violation of Section 43(a) of the Lanham Act,[5] common law trade dress infringement and unfair competition, and copyright infringement.[6]   Hyman requested that Liberty, its insurance provider, furnish a defense,[7] but  Liberty refused.  Thus, in the instant case, FLG averred that Liberty was duty-bound to defend Hyman "against claims of Trade Dress and Copyright Infringement resulting from insured's alleged advertisement of

---

[3]        This Memorandum Opinion and Order assumes familiarity with the background and procedural posture of this case, as described in the June 30 Order.

[4]        *See* Complaint in *Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry* ("Underlying Complaint"), Ex. 2 to Complaint, ¶ 17.

[5]        *See* 15 U.S.C.A. § 1125(a).

[6]        *See* Underlying Complaint ¶ 20; *see also* 17 U.S.C. § 501 (outlining copyright infringement claim).

[7]        *See* Complaint ¶ 14.

2

infringing goods and products."[8]

The Liberty Policy states that the insurance company has "the right and duty to defend" in any suit seeking damages for "personal and advertising injury."[9]  However, the policy, which is attached to and incorporated by reference into the Complaint, only covers injury arising out of "the use of another's advertising idea" or "infringing upon another's copyright, trade dress or slogan in your advertisement."[10]  The policy defines advertisement as "a paid announcement that is broadcast or published in the print, broadcast or electronic media to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."[11]

Additionally, the policy contains fifteen exclusions of acts which are not covered.  Exclusion "i" pertains to "'[p]ersonal and advertising injury' arising out of infringement of copyright, patent, trademark, trade secret or other intellectual property rights or out of securities fraud."[12]  The policy makes clear

---

[8]     Complaint ¶ 29.

[9]     Liberty Mutual Insurance Policy Endorsements ("Liberty Policy"), Ex. 1 to Complaint, at 1.

[10]     *Id.* at 4.

[11]     *Id.* at 3.

[12]     *Id.* at 2.

that the exclusion does not apply to trade dress or copyright infringement in an advertisement, but otherwise exempts intellectual property-related offenses from coverage.[13]

## III.   APPLICABLE LAW

### A.   Motion for Reconsideration

#### 1.   Rule 59

"A Rule 59(e) motion . . . 'may not be used to relitigate old matters, or raise arguments . . . that could have been raised prior to the entry of judgment.'"[14] "Rule 59(e) covers a broad range of motions, including motions for reconsideration."[15]

> There are four basic grounds upon which a Rule 59(e) motion may be granted. *First*, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. *Second*, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. *Third*, the motion will be granted if necessary to prevent manifest injustice. Serious misconduct of counsel may justify relief under this theory. *Fourth*, a Rule 59(e) motion may be justified by an intervening change in controlling

---

[13]      *See id.*

[14]      *Bonded Concrete, Inc. v. D.A. Collins Constr. Co.*, 29 F. App'x 725, 726 (2d Cir. 2002) (quoting 11 Charles A. Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice and Procedure* § 2810.1 (2d ed.)).

[15]      *Association for Retarded Citizens of Conn., Inc. v. Thorne*, 68 F.3d 547, 553 (2d Cir. 1995) (citing *Federal Practice and Procedure* § 2810.1).

law.[16]

Parties have twenty-eight (28) days following the entry of a judgment to file a Rule 59(e) motion.[17]

### 2.    Rule 60

Rule 60(a) of the Federal Rules of Civil Procedure provides a remedy when the Court's order "fail[s] to reflect the actual intention of the court."[18]

> The relevant distinction is "between what is erroneous because the thing spoken, written or recorded is not what the person intended to speak, write or record, and what is erroneous because the person later discovers that the thing said, written or recorded was wrong. The former comes within Rule 60(a); the latter does not."[19]

"Rule 60(b) was intended to preserve the delicate balance between the sanctity of final judgments and the incessant command of the court's conscience that justice be done in light of all the facts."[20]  Like Rule 59(e), Rule 60(b) does not

---

[16]    *Federal Practice and Procedure* § 2810.1 (emphasis added).

[17]    *See* Fed. R. Civ. P. 59(e).

[18]    *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d Cir. 1994). *Accord Robert Lewis Rosen Assocs., Ltd. v. Webb*, 473 F.3d 498, 504 (2d Cir. 2007).

[19]    *In re Marc Rich & Co. A.G.*, 739 F.2d 834, 837 (2d Cir. 1984) (quoting *Allied Materials Corp. v. Superior Prods. Co.*, 620 F.2d 224, 226 (10th Cir. 1980)).

[20]    *Smalls v. United States*, 471 F.3d 186, 191 (D.C. Cir. 2006) (quotation marks, ellipses, and citation omitted).  *Accord Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) ("Properly applied, Rule 60(b) strikes a balance between serving the

provide a party with the opportunity to relitigate the merits of a case in an attempt

to win a point already "carefully analyzed and justifiably disposed."[21]

Accordingly, motions for relief from judgment under Rule 60(b) are generally

disfavored in the Second Circuit.[22]

        Rule 60(b) provides that a district court may relieve a party from a

final judgment or order in five enumerated circumstances and, according to a sixth

subclause, for "any other reason that justifies relief."[23]  The Second Circuit has

held that "[m]otions under rule 60(b) are addressed to the sound discretion of the

district court and are generally granted only upon a showing of exceptional

_____

ends of justice and preserving the finality of judgments.  In other words, it should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened.") (quotation marks and citations omitted).

[21]    *In re Bulk Oil (USA) Inc.*, No. 89-B-13380, 2007 WL 1121739, at *10 (S.D.N.Y. Apr. 11, 2007) (quotation marks and citation omitted) (stating that a court should not "reconsider issues already examined simply because [a party] is dissatisfied with the outcome of his case. To do otherwise would be a waste of judicial resources.").

[22]    *See Empresa Cubana Del Tabaco v. General Cigar Co. Inc.*, 385 F. App'x 29, 31 (2d Cir. 2010) (citing *Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004)) ("We have cautioned, however, that Rule 60(b) motions are disfavored . . . ."); *Simone v. Prudential Ins. Co. of Am.*, 164 F. App'x 39, 40 (2d Cir. 2006); *United States v. International Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001).

[23]    Fed. R. Civ. P. 60(b)(1) - (6).

circumstances."[24]  The Second Circuit has set forth a three-prong test that must be

satisfied in order for a Rule 60(b) motion to succeed: (1) there must be "highly

convincing" evidence in support of the motion; (2) the moving party must show

good cause for failing to act sooner; and (3) the moving party must show that

granting the motion will not impose an undue hardship on any party.[25]

### B.    Breach of Duty to Defend[26]

In the June 30 Order, I fully explained the legal standard for an

insurer's duty to defend.  Nonetheless, there are several aspects of that standard

that bear repeating.  Pennsylvania's law is considered a strict four-corners rule.[27]

"'When the language of the policy is clear and unambiguous, [the court must] give

effect to that language.'"[28]  Still, "[a]n insurer has a duty to defend whenever the

---

[24]    *Mendell in Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d
Cir. 1990), *aff'd sub nom.*, *Gollust v. Mendell*, 501 U.S. 115 (1991) (citing
*Nemaizer*, 793 F.2d at 61).  *Accord Paddington Partners*, 34 F.3d at 1142.

[25]    *See Kotlicky v. United States Fid. Guar. Co.*, 817 F.2d 6, 9 (2d Cir.
1987).

[26]    This Memorandum Opinion and Order assumes familiarity with the
legal standard for a breach of the duty to defend set forth in the June 30 order.

[27]    *See, e.g.*, *Nationwide Mut. Fire Ins. Co. v. Malofiy*, Civ. A. No. 10-
2410, 2011 WL 1050050, at *5 (E.D. Pa. Mar. 22, 2011).

[28]    *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union
Ins. Co.*, 589 Pa. 317, 331 (2006) (quoting *401 Fourth St. v. Investors Ins. Co.*, 583
Pa. 445, 455 (2005)).

allegations of an underlying complaint against a policyholder *potentially fall within the coverage of the policy.*"[29]

Courts applying Pennsylvania law have addressed the contours of the phrase "personal and advertising injury."  To be covered under a policy:

> (1) the injury must be committed in the course of advertising the insured's goods, products, or services;
> (2) the injury must arise out of the offenses enumerated in the advertising injury definition;
> (3) the injury must be caused by the offense committed in the course of advertising; and
> (4) the offense must be committed during the policy period.[30]

Thus, "there must be some causal connection between the injury alleged and the advertising activities of the insured."[31]  When an action stems from alleged misappropriation of a product, rather than an advertising concept, the claim can no longer be fairly characterized as alleging advertising injury.[32]

---

[29]     *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F. Supp. 423, 427 (E.D. Pa. 1994), *aff'd sub nom.*, *Atlantic Mut. Ins. Corp. v. Brotech Corp.*, 60 F.3d 813 (3d Cir. 1995) (citations omitted) (emphasis added).

[30]     *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 20 F. Supp. 2d 798, 801-02 (M.D. Pa. 1998), *aff'd*, 193 F.3d 742 (3d Cir. 1999).

[31]     *Id.* at 803 (quoting *Winner Int'l Corp. v. Continental Cas. Co.*, 889 F. Supp. 809, 816 (W.D. Pa. 1994), *aff'd sub nom.*, *Cincinnati Ins. Co. v. Winner Int'l Corp.*, 54 F.3d 767 (3d Cir. 1995) (table)).  *Accord Atlantic Mut. Ins. Co.*, 857 F. Supp. at 427.

[32]     *See Green Mach. Corp. v. Zurich-Am. Ins. Grp.*, 313 F.3d 837, 841 (3d Cir. 2002); *see also Frog, Switch*, 20 F. Supp. 2d at 802.

## IV.    DISCUSSION

### A.    Motion for Reconsideration

Under Rule 59(e), FLG must demonstrate that its motion is necessary to correct manifest errors of law or fact.  The other grounds upon which a Rule 59(e) motion may be granted — newly discovered evidence, manifest injustice, and change of controlling law — are inapposite.  Insofar as FLG moves pursuant to Rule 60, section (a) is inapplicable, as FLG does not assert that the Court failed to adequately express its actual intentions.  Rule 60(b)(6), then, requires that FLG produce highly convincing evidence, show good cause for not acting sooner, and demonstrate that neither party will be unduly burdened if the Court grants the motion.  In short, under either rule, FLG must meet a high standard.

### B.    Breach of Duty to Defend

FLG argues that the Court overlooked cases supporting the proposition that under Pennsylvania law, trade dress infringement constitutes an advertising injury.  As such, FLG contends that at least certain claims in the Underlying Complaint were potentially covered by the Liberty Policy, thus triggering a duty to defend.

To determine whether that is so, Pennsylvania's strict four-corners rule dictates that the Court look only at the underlaying complaint and the policy

itself.  While the Liberty Policy may not have been especially comprehensive in

itemizing what it covered, it surely was comprehensive in outlining what it would

not.  Because Pennsylvania law requires that, to trigger a duty to defend, the injury

must have arisen out of an offense enumerated in the policy's advertising injury

definition, Liberty carefully defined its policy terms.  Liberty only covered

personal or advertising injury inflicted by means of a paid announcement published

in or aired by a media outlet.  The policy explicitly states that Liberty would not

cover intellectual property-related injuries unless they were incurred as a result of

an advertisement.  FLG has cited several cases which it believes support the

proposition that under Pennsylvania law, trade dress infringement, of any sort,

constitutes an advertising injury.  Yet FLG ignores the plain language of the

Liberty Policy and cites cases which do not appear to have arisen out of policies

with similarly unambiguous language.

       To begin, FLG cites three cases, applying Pennsylvania law, that

allegedly support the proposition that trade dress infringement represents an

advertising injury.[33]  But all three cases involved policies which defined

advertising injury as "[m]isappropriation of advertising ideas or style of doing

---

[33]    *See Cat Internet Services, Inc. v. Providence Wash. Ins. Co.*, 333 F.3d
138 (3d Cir. 2003); *Frog, Switch*, 193 F.3d 742; *Cincinnati Ins. Cos. v. Pestco,
Inc.*, 374 F. Supp. 2d 451 (W.D. Pa. 2004).

business" as well as "[i]nfringement of copyright, title or slogan."[34]  Those courts

consequently held that trade dress infringement fit within "misappropriation of

advertising ideas or style of doing business."[35]  No such language exists in the

Liberty Policy; to extend that principle to this case would ignore Liberty's

narrower definition of advertising injury.

      The remaining cases cited by FLG in support of its motion apply the

law of other states and thus do not help this Court determine how the Liberty

Policy should be interpreted under Pennsylvania law.  FLG emphasizes the Second

Circuit's holding in *R.C. Bigelow, Inc. v. Liberty Mutual Insurance Co.*, to suggest

that the Court should impose a duty to defend despite the Liberty Policy's very

clear language.[36]  For several reasons, FLG's reliance on that case is unavailing.

*First*, the court applied Connecticut law, under which the duty to defend is

---

[34]  *Cincinnati Ins. Cos*, 374 F. Supp. 2d at 455; *see also Frog, Switch,* 193 F.3d at 746 (defining advertising injury as "misappropriation of advertising ideas or style of doing business; and . . . infringement of copyright, title, or slogan"); *Cat Internet Services, Inc.*, 333 F.3d at 140 (defining advertising injury as "[m]isappropriation of advertising ideas or style of doing business [and] [i]nfringement of copyright title or slogan").

[35]  *Cat Internet Services, Inc.*, 333 F.3d at 142; *Frog, Switch*, 193 F.3d at 749; *Cincinnati Ins. Cos.*, 374 F. Supp. 2d at 459.

[36]  287 F.3d 242, 245 (2d Cir. 2002).

arguably broader than it is under Pennsylvania law.[37]  *Second*, the underlying

complaint in *R.C. Bigelow* alleged that the injury arose (at least in part) out of

specific advertisements.[38]  *Third*, there is no evidence that the policy in *R.C.*

*Bigelow* contained a broad coverage exception for "'personal and advertising

injury' arising out of the infringement of copyright, patent, trademark, trade secret

or other intellectual property rights."[39]  In the end, the Second Circuit's holding in

*R.C. Bigelow* — non-binding precedent construing the law of a different state — is

simply insufficient to surmount the high bars imposed by a Rules 59(e) and

60(b).[40]

---

[37]     *Id.* at 246 ("The duty to defend does not hinge on the skill or manner in which a complaint is drafted, but rests on the substantive thrust of the complaint, *and the surrounding facts.*") (emphasis added).

[38]     *See id.* at 244 ("The second claim, for false advertising, alleged that Bigelow failed to correctly indicate on the packaging that the teas were 'artificially flavored,' and that Bigelow engaged in false advertising by mounting an aggressive marketing and print advertising campaign to promote these teas, while conveying the false and misleading impression that those herbal teas were all natural.); *id.* at 248 ("Because the ads were attached as exhibits to Celestial's complaint, Bigelow was entitled to believe that Celestial would try to use the ads to prove the likelihood of consumer confusion that it claimed resulted from trade dress infringement.").

[39]     Liberty Policy, at 2.

[40]     Similarly, because the Underlying Complaint requests that Hyman destroy advertising materials that depict the offending jewelry, FLG argues that the Court should consider the complaint's prayer for relief in determining whether a complaint falls within an insurance policy's coverage.  The only case FLG cites in

It is beyond cavil that, "[s]ince the language [of a contract] is presumptively within the control of the party drafting the agreement . . . any ambiguity in that language will be interpreted against the drafter."[41]  More specifically, in an insurance policy, "[a]mbiguities must be construed in favor of the insured because the insurer writes the contract."[42]  In light of this interpretive rule, Liberty appears to have removed all ambiguities from its contract.  It has clearly defined the terms it uses and carefully outlined the acts it excludes.  In the end, there are no ambiguities here.  FLG has not demonstrated that the court made manifest errors of law or fact, nor has it set forth highly convincing evidence that

---

support applied New York law.  *See Technaoro Inc. v. United States Fid. & Cas. Co.*, No. 05 Civ. 9216, 2006 WL 3230299 (S.D.N.Y. Nov. 7, 2006).  That case is distinguishable on several grounds.  *First*, as explained at some length in the course of this Court's choice of law analysis, New York law imposes a broader duty to defend than does Pennsylvania law.  *See Feldman Law Group P.C.*, 2011 WL 2610642, at *2 ("Whereas Pennsylvania employs a strict four-corners rule, New York will impose a duty to defend based on knowledge extrinsic to the contract. This difference has the potential to fundamentally alter a court's analysis . . .").  *Second*, the policy at issue in *Technaoro* defines advertising as "attracting the attention of others *by any means* for the purpose of seeking customers or supporters or increasing sales or business."  *Technaoro Inc.*, 2006 WL 3230299, at *1 (emphasis added).  This is considerably broader than the Liberty Policy's definition of advertising.  *Finally*, the *Technaoro* court found the prayer for relief relevant in conjunction with other references, made elsewhere in the underlying complaint, to "promotion," which fits within that policy's expansive definition of advertising.  In short, *Technaoro* does little to advance FLG's argument.

[41]    11 Williston on Contracts § 32:12 (4th ed.).

[42]    *Frog, Switch*, 193 F.3d at 746.

13

relief from a judgment is warranted.[43]  There simply is no sound basis for the Court to revise its earlier Order.

## V.   CONCLUSION

For the foregoing reasons, FLG's motion to alter, amend or provide relief from the June 30, 2011 order is denied.  The Clerk is directed to close this motion [docket No. 22].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 10, 2011

---

[43]      The Court need not reach the other elements — that FLG had good cause for not acting sooner and that it demonstrated that neither party would be unduly burdened if the Court granted the motion — of a Rule 60(b)(6) motion.

- Appearances -

**For Plaintiff:**

Stephen E. Feldman, Esq.
Robert H. Morse, Esq.
Kalpana Nagampalli, Esq.
Feldman Law Group, P.C.
220 East 42nd Street
New York, NY 10017
(212) 532-8585

**For Defendant:**

Marshall T. Potashner, Esq.
David R. Shyer, Esq.
Jaffe & Asher LLP
600 Third Avenue, 9th Floor
New York, NY 10016
(212) 687-3000

15